## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

Case No.  10-36096

COLLIE ALONZO LAWLESS
SANDRA PURKEY LAWLESS

Debtors

## MEMORANDUM ON TRUSTEE'S
## OBJECTION TO EXEMPTIONS

**APPEARANCES:**    HAGOOD, TARPY & COX, PLLC
T. Lynn Tarpy, Esq.
900 South Gay Street
Suite 2100 Riverview Tower
Knoxville, Tennessee  37902
Attorneys for Debtor

LAW OFFICES OF MAYER & NEWTON
John P. Newton, Jr., Esq.
1111 Northshore Drive
Suite S-570
Knoxville, Tennessee  37919
Attorneys for Trustee

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Objection to Exemptions filed by the Chapter 7 Trustee on February 18, 2011, as amended by the Trustee [sic] Objection to the Debtor's Amended Exemptions filed on March 11, 2011, and the Trustee [sic] Objection to the Debtors [sic] Amended Exemptions filed on September 20, 2011 (collectively, Objection to Exemption), objecting to the exemption claimed by the Debtor, Collie Alonzo Lawless, pursuant to Tennessee Code Annotated § 26-1-111(1)(D) (Supp. 2011) in a Nationwide Agent Security Compensation Plan in the amount of $261,347.00 as of February 2010.  In support of his Objection to Exemption, the Trustee argues that the Agent Security Compensation Plan is not a "qualified" plan under the Internal Revenue Code; that payment under the plan is not on account of age or length of service; that the plan is a deferred compensation plan and not a stock, bonus, pension, profit sharing, annuity, or similar plan; and that the assets of the plan fund are not exempt because the Debtor may have the right to compensation other than periodically and may accelerate payments to receive a lump sum or in periodic payments of less than 60 months.  Pursuant to an Order entered on September 21, 2011, the issue before the court is whether the Debtor, Collie Alonzo Lawless,[1] is entitled to an exemption in the Agent Security Compensation Plan pursuant to Tennessee Code Annotated § 26-1-111(1)(D) and, if so, the amount of the exemption.

Having determined that an evidentiary hearing was not necessary and that all issues could be decided upon stipulations and briefs, the parties filed the Joint Stipulation of Undisputed Facts (Joint Stipulations) on May 29, 2012, along with briefs in support of their respective arguments.  On

---

[1] All references within this Memorandum to "Debtor" shall refer exclusively to Collie Alonzo Lawless.  Any references to Sandra Purkey Lawless, individually, will be by name.  All references to "Debtors" shall refer to both Debtors jointly.

2

May 25, 2012, prior to filing the Joint Stipulations, the parties filed a document entitled "Joint Exhibits Stipulated by the Parties" to which they attached the following eleven stipulated exhibits: (1) the Objection to Exemptions filed by the Trustee on February 18, 2011; (2) Schedule B - Personal Property - Amended and Schedule C - Property Claimed as Exempt - Amended (collectively Amended Schedules B and C) filed by the Debtors on February 24, 2011; (3) the Trustee Objection to the Debtor's Amended Exemptions filed by the Trustee on March 11, 2011; (4) Amendment to Schedule C filed by the Debtors on September 15, 2011; (5) the Trustee Objection to the Debtors Amended Exemption filed by the Trustee on September 20, 2011; (6) the Affidavit of Shawn Patterson dated June 21, 2011; (7) the Debtor's Agent Security Compensation Plan; (8) the Debtor's Security Compensation Plan; (9) Nationwide's Agent Agreement of 1987 with Amendments; (10) the Debtor's Initial Election Form dated December 1, 2006; and (11) the Deposition of Shawn Patterson taken February 22, 2012.

On May 30, 2012, the Trustee filed a Motion to Strike and/or Objection to Exhibit 6 of Debtor's Amended Brief (Motion to Strike), asking the court to strike an Affidavit of the Debtor that was attached to the Amended Brief in Opposition to Trustee's Objection to Debtors' Amended Exemptions filed on May 29, 2012. On that same day, the Debtor filed a Reply to Motion to Strike, stating that he did not contest the Trustee's Motion to Strike. The court will accordingly grant the Motion to Strike, and the Affidavit will be stricken.

**I**

The following facts have been stipulated or are not otherwise in dispute.  The Debtors filed the Voluntary Petition commencing their joint Chapter 7 bankruptcy case on December 27, 2010, and the Trustee was appointed.  JT. STIPS. at ¶ 1.  At that time, the Debtor held an interest in a "Deferred Compensation" plan valued in the Debtors' original Schedule B and exempted in their original Schedule C as "unknown."  The Trustee filed an Objection to Exemptions on February 18, 2011, stating that the exemption should be disallowed because of the "unknown" exempted amount.  STIP. EX. 1.  The Debtors filed an Amended Schedule B on February 24, 2011, listing the "Deferred Compensation" plan with a value of $261,347.00 as of February 2010.   STIP. COLL. EX. 2.  The Debtors also filed an Amended Schedule C, seeking to exempt the entire amount under Tennessee Code Annotated § 26-2-105(a), in response to which the Trustee filed the Trustee Objection to the Debtor's Amended Exemptions on March 11, 2011, seeking disallowance of the Debtor's exemption as reflected on Amended Schedule C.   STIP. COLL. EX. 2;  STIP. EX. 3.  The Debtors then filed a second Amendment to Schedule C on September 15, 2011, stating that "the Deferred Compensation is to be exempted under T.C.A. 26-2-111(1)(D) based upon the February 2010 value (which may increase or decrease) of $261,347.00."  STIP. EX. 4.  The Trustee filed the pending Objection to Exemption on September 20, 2011.   STIP. EX. 5.

The Debtor is and has been employed since 1982 as an insurance agent for Nationwide Insurance Company in Morristown, Tennessee.  JT. STIPS. at ¶ 2.  Under the terms of his Agent's Agreement, which has an effective date of January 1, 1987, deferred compensation and extended earnings accrued through the Agent Security Compensation Plan will only be paid by Nationwide

4

under a "Separation of Service resulting from a qualified cancellation," which includes death, total

and permanent disability, or retirement. JT. STIPS. at ¶ 7; STIP. EX. 9; STIP. EX. 11 at pg. 12, ln. 1

through pg. 13, ln. 25.   Specifically, as it relates to the issues before the court, the Agent's

Agreement explains the terms of the Agent Security Compensation Plan as follows:

11.  Agency Security Compensation.

   a.  Computation of Deferred Compensation Incentive Credits.

> For each full calendar year you act as an agent for the Companies, beginning in the first year your annual DCIC Class Earnings equal or exceed the Threshold Amount, until you are age sixty-five (65), the Companies will credit to your account as Deferred Compensation Incentive Credits the percentage set forth below of your DCIC Class Earnings.  The Threshold Amount is four times the minimum amount of earnings for which Deferred Compensation Incentive Credits will be credited as set forth in the table below and as further adjusted from time to time in accordance with this paragraph 11-a.  DCIC Class Earnings are identified as your annual original and renewal service fee earnings, including earnings from Nationwide Financial Services, Inc., but excluding earnings from joint underwriting associations, reinsurance facilities, auto insurance plans, the variable life policy known as "Investment Life," and line 19 auto business, and limiting earnings from Colonial Insurance Company business to 25% of such earnings.  If you entered into an Agent's Agreement providing for an Agents Security Compensation Plan for the first time prior to January 1, 1987, qualification for Deferred Compensation Incentive Credits will occur on the earlier of the satisfaction of the requirement set forth above or the completion of your fifth year of service as an agent with the Companies, crediting all years of service under an Agent's Employment Agreement, Agency Representative Agreement, or Agent's Agreement.

> 0% of such earnings under $13,100.00.
> 3% of such earnings from $13,100.00 to $19,599.99.
> 6% of such earnings from $19,600.00 to $26,299.99.
> 10% of such earnings from $26,300.00 to $32,799.99.
> 15% of such earnings from $32,800.00 to $462,100.00.
> 0% of such earnings in excess of $462,100.00.

> It is understood that the Deferred Compensation Incentive Credit formula set out above is applicable to credits calculated for the calendar years of 1987

5

and 1988 only.  For each succeeding two (2) year period, the formula ranges shall be adjusted based on fifty (50) percent of the percentage change that has occurred in the Consumer Price Index (CPI) for all Urban Consumers, U.S., City Average, All Items during the preceding two (2) year period.  (The change in the CPI will be measured over a two year period based on the month of June, with formula changes, if any, effective the following January 1.)  These changes will be communicated prior to their effective date and shall supersede the previous formula.

b.   Extended Earnings Payable Upon Qualified Cancellation of this Agreement.

When you qualify for the Deferred Compensation Incentive Credits, you will also qualify for extended earnings payable upon qualified cancellation of this Agreement.  Upon qualified cancellation of this Agreement an amount equal to the renewal service fees paid to you by each Company for the last full twelve (12) calendar months immediately proceeding such cancellation subject to the following exceptions:

(1)   Renewal service fees earned from joint underwriting associations and state automobile insurance plans shall be excluded.

(2)   For purposes of extended earnings renewal services shall be reduced by 50% on reinsurance facility and line 19 auto business.

(3)   Extended Earnings on Nationwide General business shall be calculated at 70% of the last 12 months total compensation paid to you on such business.

(4)   Extended Earnings on Colonial business shall be calculated at 25% of the last 12 months total compensation paid to the Agent.

(5)   Extended Earnings will be retroactively reduced by the amount of renewal commissions originally included in the extended earnings calculation on any commercial policy or account which does not renew in the 12 months following cancellation of this agreement on which policy or accounts you were paid $20,000 or more in renewal commissions during the preceding 12 month period.  This chargeback will not apply if cancellation of this agreement occurs due to your death, permanent and total disability, or attainment of age 65.

c.   Amounts Payable Upon Qualified Cancellation.

(1)   If you live until retirement, you will receive your Extended Earnings, provided you have completed five years of service with the Companies as an agent.  In addition, you will receive Deferred Compensation Incentive Credits in accordance with the provisions outlined in paragraph 11-c(3) and 11-d(2).

(2)   If you die or become totally and permanently disabled which results in the cancellation of this Agreement, provided that you have completed five years of service with the Companies as an agent, you or your beneficiary, or the estate of your beneficiary will receive your Extended Earnings and 100% of your accumulated Deferred Compensation Incentive Credits.

(3)   If at the time this Agreement is cancelled for reasons other than death or total and permanent disability you have completed at least five years of service with the Companies as an agent, you will receive the Extended Earnings.  Deferred Compensation Incentive Credits will be paid to you in accordance with the following schedule and the provisions of paragraph 11-d(2):

(a)   50% of Benefit Payable – When age plus length of service as agent equals the sum of 45.

(b)   10% Additional Benefit Payable for each year of service after the sum of 45 as defined in paragraph (a) above is attained, subject to a maximum under (a) and (b), of 100% of such benefit.

d.   Provisions for Payment

After deducting any amount paid to you under this paragraph for cancellation or termination of any prior Agreement, or as extended renewal service fees under any former agreement, or any amounts due the Companies from you, the Companies will pay to you, or should you not survive, your beneficiary or the estate of your beneficiary:

(1)  Your Extended Earnings divided into ten (10) equal parts as follows:

Commencing within sixty (60) days following qualified cancellation of this Agreement:

7

The first part shall be payable in twelve (12) equal monthly installments, each monthly installment after the first on the first day of subsequent consecutive months.

The remaining parts shall be paid in equal annual installments, the first annual installment payable thirty (30) days after payment of the last monthly installment and each other annual installment thereafter on the anniversary of that date until paid.  At your election prior to your cancellation, such annual installments may be made in equal monthly payments.

(2)  The amount of Deferred Compensation Incentive Credits to which you are entitled payable in ten (10) equal parts as follows:

Commencing sixty (60) days after your death or total and permanent disability which results in the cancellation of this Agreement, or sixty (60) days after other qualified cancellation of this Agreement.

It is understood that in the event such payments would commence prior to age 60, for reasons other than death or total and permanent disability, such payments shall be reduced to the percentages shown in the following table:

| Age At Which Benefit Payments Commence | Percent of Accrued Benefits To be Paid |
| --- | --- |
| 60 | 100.00% |
| 59 | 94.34% |
| 58 | 89.00% |
| 57 | 83.96% |
| 56 | 79.21% |
| 55 | 74.73% |
| 54 | 70.50% |
| 53 | 66.51% |
| 52 | 62.74% |
| 51 | 59.19% |
| 50 | 55.84% |
| Under 50 | None |

*These sums shall be payable as outlined in d-(1) above.*

8

(3)  Election for Different Payment.

At your written election, received by the Companies prior to the time of cancellation of this Agreement, the Companies will agree to make payments of Extended Earnings and/or Deferred Compensation Incentive Credits under one of the following methods.  Amounts payable as Deferred Compensation Incentive Credits, regardless of election, are not payable prior to your reaching age fifty (50) except in the case of death or total and permanent disability.

(a)     To make payments in not less than three (3) nor more than ten (10) equal parts.

Commencing within sixty (60) days after qualified cancellation or such other later date as provided by the election and the terms of this Agreement, and the parts shall be payable as in d-(1) above.

(b)     To pay to you the amounts payable in accordance with paragraph 11, under one of the following three forms of annuity benefits.  Such benefits to be determined as actuarial equivalent amounts in accordance with such interest rates and mortality tables as adopted by the Companies for this purpose.

1.  Life Annuity – No Death Benefit
2.  Life Annuity – Installment Refund, or
3.  Life Annuity – Joint and Survivorship

Payments shall commence within sixty (60) days after qualified cancellation or such other later date as provided by the election and the terms of this Agreement.

(c)     To divide the amounts payable to you as you elect, paying part in equal annual installments, not less than three (3) nor more than ten (10), with the balance payable under subparagraph (b) above.

The amount payable as equal annual installments shall be paid as provided in subparagraph (a) and the balance as in subparagraph (b).

(4)  Payment in Event of Employment.

. . . .

9

    e.   Qualified Cancellation.

> Unless you have induced or attempted to induce, either directly or indirectly, policyholders to lapse, cancel, or replace any insurance contract in force with the Companies, the cancellation of this Agreement shall be a qualified cancellation for the purpose of this Agreement.
>
> . . . .

STIP. EX. 9 at 3-6.  The Agent Security Compensation Plan is funded by Nationwide upon an individual agent's separation from service and is maintained as a general debt of Nationwide, owed and paid to the individual agent from Nationwide's general assets.  JT. STIPS. at ¶ 8; STIP. EX. 6 at ¶ 4.  The funds are not maintained in separate, individually designated accounts for specified agents. JT. STIPS. at ¶ 8; STIP. EX. 6 at ¶ 4; STIP. EX 11 at pg. 20, ln. 2-4; pg. 21, ln. 3-6.

As of February 2012, the Debtor's total Agent Security Compensation Plan, including his extended earnings, equaled more than $307,000.00, with an aggregate $261,347.91 based upon pre-2005 and post-2004 Deferred Compensation Incentive Credits.  JT. STIPS. at ¶ 6.  Specifically, as of February 21, 2011, the Debtor was entitled to receive the following upon a qualified cancellation of his Agent's Agreement:

> *Pre-2005 DCIC*
> You have accrued $174,927.70 in Pre-2005 DCIC.  Pre-2005 DCIC benefits are not subject to Internal Revenue Code Section 409A ("409A").
>
> *Post-2004 DCIC*
> You accrued Post-2004 DCIC in the amount of $0.00 for the period from January 1 2010, through December 31, 2010.  The total amount of Post-2004 DCIC you have accrued equals $86,420.21.
>
> DCIC benefits paid to you before age 60, for other than death or total disability, are subject to a discount factor and the Earned Benefit Value Schedule.  In addition, once you turn age 65 no further DCIC benefits of any kind will accrue.

*Extended Earnings*

Your estimated Extended Earnings, based on eligible renewal service fees calculated on a 12 month moving basis as of December 31, 2010, are $121,368.64.

Nationwide will pay your Pre-2005 DCIC and Post-2004 DCIC, if applicable, and Extended Earnings according to your election(s) on the Benefit Payment Election Form(s) following a qualified cancellation and a separation from service, as described herein. 409A requires an agent to have a complete and permanent separation from service before payment of any post-2004 DCIC or Extended Earnings can commence. This requires an agent to stop performing services for Nationwide and its affiliates and subsidiary companies, which generally occurs when the IC Agreement is cancelled as long as the agent does not continue providing services in any other form, such as an employee, a consultant or as an associate agent. If you did not timely complete a Benefit Payment Election Form(s), the 10-year default payout will apply. We recommend that you review your Benefit Payment Election Form(s) and beneficiary election forms.

You may change your elections for your Pre-2005 DCIC at any time before you have a qualified cancellation. 409A also imposes restrictions on how and when you may change your distribution elections for post-2004 DCIC and Extended Earnings. For a change to your elections for your post-2004 DCIC and Extended Earnings to become effective, you must submit the change before you cancel your IC Agreement and at least twelve months before a separation form [sic] service occurs. Further, distribution of any such post-2004 DCIC and Extended Earnings subject to the election change will not commence until five years after the distribution under the prior election would have occurred. For example, if you change your election for your post-2004 DCIC and Extended Earnings from a lump sum distribution in the sixteenth month after a qualified cancellation and separation from service to a three year annual payout, distribution of your post-2004 DCIC and Extended Earnings would not commence until seventy-six months after you have a separation from service.

Your Security Compensation will be paid under any one of three circumstances:

- Separation from Service
- Total and Permanent Disability
- Death

Nationwide will base your Extended Earnings on eligible renewal service fees paid to you in the last 12 full months immediately preceding qualified cancellation.

11

Stip. Ex. 7 at 1-2.  As reflected on his Initial Election Form completed on December 1, 2006, rather than choosing "[o]ne lump sum payment made on the first day of the 16th month following the cancellation of the Agent Agreement[,]" the Debtor has, in the event of either death or total and permanent disability, elected "100% of the value of my account paid in 10 . . . equal annual installments.  . . . .  The annuity amount shall be determined in accordance with the then annuity purchase rates as adopted by the Companies."  Stip. Ex. 10.

## II

Pursuant to 11 U.S.C. § 541(a) (2006), the filing of their Voluntary Petition brought all property and interests in property held by the Debtors, including the Debtor's interest in the Agent Security Compensation Plan, into their bankruptcy estate.  *See, e.g., Matter of Pedersen*, 155 B.R. 750, 757 (Bankr. S.D. Iowa 1993) (holding that a deferred compensation plan was property of the estate).  The Debtors are, nevertheless, entitled to claim exemptions in certain property as authorized by 11 U.S.C. § 522 (2006), which states, in material part, the following:

> (b)(1)  Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in . . . paragraph (3) of this subsection.  . . . .[.]
>
> . . . .
>
>> (3)  Property listed in this paragraph is—
>>
>> (A) . . . any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located at a single State for such 730-day period, the place in which the debtor's domicile was located for

180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place; [and]

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law[.]

11 U.S.C. § 522(b).  "[E]xemptions are determined as of the date upon which the bankruptcy case is commenced, are construed liberally in favor of debtors, and 'should be construed in light of the purpose for which [they are] created.'"  *In re Daley*, 459 B.R. 270, 274 (Bankr. E.D. Tenn. 2011) (quoting *Lebovitz v. Hagemeyer (In re Lebovitz)*, 360 B.R. 612, 618-19 (B.A.P. 6th Cir. 2007)); *see also Massey v. Casals*, 2011 WL 1734066, at *7, 2011 Tenn. App. LEXIS 223, at *17 (Tenn. Ct. App. May 3, 2011) ("The statutes providing exemptions from garnishment are to be liberally construed in favor of the debtor.").  Furthermore, "when it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, then the favorable method should be chosen."  *In re Chapman*, 424 B.R. 823, 826 (Bankr. E.D. Tenn. 2010) (quoting *In re Garbett*, 410 B.R. 280, 284 (Bankr. E.D. Tenn. 2009)).  A party in interest may object to a debtor's claimed exemptions and bears the burden of proof by a preponderance of the evidence; however if the objecting party fails to carry the burden of proof, the exemption retains its prima facie presumption of correctness and stands.  FED. R. BANKR. P. 4003; *Garbett*, 410 B.R. at 284.

Pursuant to the "opt out" provisions of § 522(b), states may require debtors to use state exemptions rather than the federal exemptions enumerated in § 522(d).  Tennessee has "opted out" of the federal exemptions, as codified in Tennessee Code Annotated § 26-2-112.[2]  Accordingly, as

---

[2]        **Exemptions for the purpose of bankruptcy**.  —  The  personal  property

(continued...)

the basis for his claimed exemption in the Agent Security Compensation Plan, the Debtor relies on

Tennessee Code Annotated § 26-2-111(1)(D), which provides, in material part:

> In addition to the property exempt under § 26-2-103, the following shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee:
>
> (1) The debtor's right to receive:
>
> . . .
>
> (D) To the same extent that earnings are exempt pursuant to § 26-2-106, a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of death, age or length of service, unless:
>
>> (i) Such plan or contract was established by or under the auspices of an insider that employed the debtor at the time that the debtor's rights under such plan or contract arose;
>>
>> (ii) Such payment is on account of age or length of service; and
>>
>> (iii) Such plan or contract does not qualify under §§ 401(a), 403(a), 403(b), 408, 408A, or 409 of the Internal Revenue Code of 1954 [26 U.S.C. §§ 401(a), 403(a), 403(b), 408, 408A or 409];
>
> The assets of the fund or plan from which any such payments are made, or are to be made, are exempt only to the extent that the debtor has no right

---

[2](...continued)

exemptions as provided for in this part, and the other exemptions as provided in other sections of the Tennessee Code Annotated for the citizens of Tennessee, are hereby declared adequate and the citizens of Tennessee, pursuant to section 522(b)(1), Public Law 95-598 known as the Bankruptcy Reform Act of 1978, Title 11 USC, section 522(b)(1), are not authorized to claim as exempt the property described in the Bankruptcy Reform Act of 1978, 11 USC 522(d).

TENN. CODE ANN. § 26-2-112 (2000); *see also Rhodes v. Stewart*, 705 F.2d 159, 161-62 (6th Cir. 1983) (finding that Tennessee's "opt-out" statute is constitutional).

Additionally, although § 522 was considerably impacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), it did not alter application of § 522(b) or render moot any of the prior case law concerning that subsection as it relates to the "opt out" provision and the issues addressed in this contested matter. Accordingly, all statutes and cases relied upon by the court in making its determination in this contested matter were decided pre-BAPCPA but are nevertheless applicable to this BAPCPA case.

> or option to receive them except as monthly or other periodic payments
> beginning at or after age fifty-eight (58).  Assets of such funds or plans are
> not exempt if the debtor may, at the debtor's option, accelerate payment so
> as to receive payment in a lump sum or in periodic payments over a period
> of sixty (60) months or less[.]

TENN. CODE. ANN. § 26-2-111(1)(D).  "The Tennessee exemption statute creates two exemptions for a stock bonus, pension, profit sharing, annuity, or similar plan or contract.  The first exemption applies to payments from a plan.  The second exemption applies to the assets from which payments may be made [i.e., the accounts themselves]." *Brown v. Westvaco Corp. (In re Cassada)*, 86 B.R. 541, 542 (Bankr. E.D. Tenn. 1988).

> As evidenced by the plain and ordinary language used, the purpose of the statute is
> to allow Tennessee citizens to exempt a portion of payments received as a
> replacement for lost earnings, with its application limited to retirement-type benefits
> such as "a stock bonus, pension, profitsharing, annuity, or similar plan or contract on
> account of death, age, or length of service."  In making a determination as to whether
> the Debtor's payments fit within the scope of § 26-2-111(1)(D), the court's focus is,
> likewise, two-fold:  whether the payments are received pursuant to one of the
> enumerated types of plans or contracts and whether they are "on account of death,
> age or length of service."

*In re Vickers*, 408 B.R. 131, 138 (Bankr. E.D. Tenn. 2009).  Here, because the Debtor has not begun receiving payments through the Agent Security Compensation Plan, the focus is on whether the assets within the plan are exempt.  Nevertheless, the court finds it necessary to address the Trustee's arguments and examine the payment structure component established under the Agent Security Compensation Agreement.

The Trustee argues first that the Agent Security Compensation Plan cannot be claimed exempt under § 26-2-111(1)(D) because, although death is one of the events by which the benefits may be paid, the account does not also generally pay under an age or length of service option, and

it is, therefore, not "on account of death, age, or length of service." The court disagrees. The term

"on account of" has been interpreted to mean "because of" by the Supreme Court, "thereby requiring

a causal connection between the term that the phrase 'on account of' modifies and the factor

specified in the statute at issue." *Rousey v. Jacoway*, 544 U.S. 320, 326, 125 S. Ct. 1561, 1566, 161

L.Ed.2d 563 (2005).[3] "'Stock bonus, pension, profitsharing' are forms of retirement benefits that

are paid regularly based on a debtor's employment and wages or salary. In other words, they are all

forms of deferred compensation for services rendered." *Vickers*, 408 B.R. at 139; *see also Rousey*,

544 U.S. at 331, 125 S. Ct. at 1569 ("The common feature of all of these plans is that they provide

income that substitutes for wages earned as salary or hourly compensation. This understanding of

the plans' similarities comports with the other types of payments that a debtor may exempt under

[the statute]—all of which concern income that substitutes for wages."). In order to determine

whether a plan was intended as a replacement for income, courts examine the nature and contents

of the contract, whether the payments were intended to be a substitute for wages, whether the

---

[3] The Supreme Court's determination was made in analysis of the federal exemption statute which provides that a debtor may exempt his or her right to receive –

> (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—
>
> > (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;
> >
> > (ii) such payment is on account of age or length of service; and
> >
> > (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

11 U.S.C. § 522(d)(10)(E) (2006). "[W]here a state has borrowed from similar federal legislation, federal courts may presume that the state legislatures intended what Congress intended." . . . . Pursuant to its legislative history, § 522(d)(10)(E) "exempts certain benefits that are akin to future earnings of the debtor." *Vickers*, 408 B.R. at 138-39 (quoting *In re Green*, 2007 WL 1031677, at *1-2, 2007 Bankr. LEXIS 1182, at *3-4 (Bankr. E.D. Tenn. Apr. 2, 2007) (quoting H.R. REP. NO. 95–595, at 362 (1977), as reprinted in 1978 U.S.C.C.A.N. 5787, 6318)).

contributions were made over time, the existence of multiple contributors, the return on the investment, and the degree of control the debtor may exercise over the assets. *Vickers*, 408 B.R. at 139-40 (quoting *Andersen v. Reis (In re Andersen)*, 259 B.R. 687, 691 (B.A.P. 8th Cir. 2001)). "The longer the period of investment, the more likely the investment falls within the ambit of the statute and is the result of a long standing retirement strategy . . .[. Additionally,] investments which compute payments based upon the participant's estimated life span, but which terminate upon the participant's death or the actual life span, are akin to a retirement investment plan." *Vickers*, 408 B.R. at 139-40 (quoting *Andersen*, 259 B.R. at 691).

Based upon the foregoing factors, the court finds that the Agent Security Compensation Plan falls within the definition of being paid out "on account of" or "because of" death, age, or length of service. First, by its terms, the Debtor's benefits under the Agent Security Compensation Plan may only be paid out at the occurrence of one of the following qualifying cancellations – death, total and permanent disability, or retirement. Second, the Agent Security Compensation Plan "is funded by Nationwide upon separation from service resulting from qualified cancellation of the Nationwide agent agreement . . .[,] is not maintained in individually designated accounts for specified agents . . .[, and] is a general debt of Nationwide that is owed to the individual agent from the general assets of Nationwide." STIP. EX. 6 at ¶ 4. Accordingly, the Debtor exercises zero control over the funds which are contributed and held exclusively by Nationwide until an agent's death, total and permanent disability, or retirement. It appears clear that the payments are then intended to be a substitute for the agent's wages that he or she is no longer receiving and are, thus, "deferred compensation for services rendered." *Vickers*, 408 B.R. at 139; *see also Carmichael v. Osherow (In re Carmichael)*,

17

100 F.3d 375, 379 (5th Cir. 1996) ("[T]o be exempt, the right to receive a payment under a 'similar plan or contract' must be 'on account of illness, disability, death, age, or length of service.' Yet nowhere do the words 'only' or 'solely' appear. The language of the subject section does not express a requirement that the right to receive a payment under a 'similar plan or contract' be conditioned 'only' or 'solely' or 'exclusively' on one of the . . . listed events.") (footnote omitted).

The Trustee also argues that the Agent Security Compensation Plan does not fall within the scope of the exemption because subsections (D)(i) through (D)(iii) are to be read disjunctively, the Plan is not "on account of" age or length of service as required by subsection (D)(ii), and the Plan does not qualify under any of the Internal Revenue Code sections specified in subsection (D)(iii). *See* Stip. Ex. 6 at ¶ 2 ("[Agent Security Compensation Plan] is a nonqualified, unfunded, deferred compensation plan that Nationwide exclusive, independent contractor agents may be eligible to receive."). The court, however, finds that the statute is not ambiguous, that these subdivisions apply only when payments have commenced under a stock bonus, pension, profitsharing, annuity, or similar plan, and that each subdivision of subsection (D) must be satisfied in order to be excepted from the exemption. Had the legislature intended that the statute be read in the disjunctive rather than the conjunctive, it could have used "or" rather than "and" with respect to the requirements enumerated. Furthermore, reading the statute in the disjunctive leads to an absurd and inconsistent result. If the court were to read each subdivision of subsection (D) separately, any plan that provided for payment "on account of age or length of service" as stated in subsection (D)(ii) would be excepted from exemption, even though one of subsection (D)'s initial requirements for a payment to be exemptible is that it comes "under a stock bonus, pension, profitsharing, annuity, or similar

18

plan or contract on account of death, age or length of service." TENN. CODE ANN. § 26-2-111(1)(D).

Accordingly, notwithstanding that the Agent Security Compensation Plan was not "established by or under the auspices of an insider that employed the debtor at the time that the debtor's rights under such plan or contract arose[,]" TENN. CODE ANN. § 26-2-111(1)(D)(i), and that any payments to be paid to the Debtor would be on account of age or length of service, the Agent Security Compensation Plan is not qualified under one of the listed sections of the Internal Revenue Code and any payments received by the Debtor would not, therefore, be exempt. *See* STIP. EX. 6 at ¶ 2.

Additionally, the Debtor may not exempt his accumulated benefits held in the Agent Security Compensation Plan because it does not satisfy the final requirement of subsection (D) that payments may not be accelerated "so as to receive payment in a lump sum or in period payments over a period of sixty (60) months or less." TENN. CODE ANN. § 26-2-111(1)(D).  One purpose for enacting § 26-2-111(1)(D) was "to encourage the citizens of Tennessee to save for their retirement[;]" however, as stated by the Tennessee Court of Appeals,

> We believe the legislature also intended to limit the exemption to retirement plans that cannot, at the option of the debtor and without an involuntary penalty, such as a federally mandated tax penalty, be accessed by the debtor before 58-years of age, as a lump sum, or accelerated such that payments may be received over a period of 60 months or fewer.
>
> . . . .
>
> If . . . the debtor may, without a penalty prescribed by law, receive the assets as a lump-sum payment, in periodic payments over a period of 60 months or less, or before 58-years of age, the pension or retirement plan is not exempt.  This interpretation is supported by the purpose of the exemption, the logical interplay between the statutory sections, and the majority of applicable case law.

*Massey*, 2011 WL 1734066, at *9, 2011 Tenn. App. LEXIS 223, at *23-24; *see also Cassada*, 86 B.R. at 543 ("The assets are not exempt if the debtor has the option to accelerate payment and receive all the assets in a lump sum or in periodic payments over a period of 60 months or less.").

As reflected in the Initial Election Form, in the event of death or total and permanent disability, the Debtor had an accelerated payment option wherein he or his beneficiary could receive "[o]ne lump sum payment made on the first day of the 16th month following the cancellation of the Agent Agreement." STIP. EX. 10. Additionally, the periodic payment option provides that, at the agent's choice, the value of the account could be paid in "not less than three nor more than ten[] equal annual installments." STIP. EX. 10. Both options fall outside the statutory requirement that a debtor ***may not have the option*** to accelerate payments into a lump sum or periodic payments of five years or less, and it is immaterial that the Debtor chose to receive his payments over a period of ten years.[4]

---

[4] That the Debtor may change the ten year payment option during the term of his employment with Nationwide is made clear by the fact that the election was made on a document entitled "*Initial* Election Form," which is stipulated as Exhibit 10, by the Agent's Agreement which provides that:

> At your written election, *received by the Companies prior to the time of cancellation of this Agreement*, the Companies will agree to make payments of Extended Earnings and/or Deferred Compensation Incentive Credits under one of the following methods. . . .
>
> (a) To make payments in not less than three (3) nor more than ten (10) equal parts.

STIP. EX. 9 at ¶ 11(d)(3) (emphasis added), and by the Agency Security Compensation Plan which provides that:

> You may change your elections for your Pre-2005 DCIC at any time before you have a qualified cancellation. 409A also imposes restrictions on how and when you may change your distribution elections for post-2004 DCIC and Extended Earnings. For a change to your elections for your post-2004 DCIC and Extended Earnings to become effective, you must submit the change before you cancel your IC agreement and at least twelve months before a separation from service occurs.

STIP. EX. 7 at 1.

For the foregoing reasons, the court finds that the Debtors may not exempt the benefits to which the Debtor, Collie Alonzo Lawless, will be entitled to receive under the Agent Security Compensation Plan upon the occurrence of one of the qualifying cancellations set forth therein.  The Trustee's Objection to Exemption will be sustained.

An Order consistent with this Memorandum will be entered.

FILED:  July 20, 2012

BY THE COURT

/s/  *RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE